### ADAMS et al. v. BOWEN et al.

### No. 2475.

Circuit Court of Appeals, First Circuit.

Jan. 2, 1931.

Harry Shapiro, of Boston, Mass. (Alexander G. Gould, of Boston, Mass., on the brief), for appellants.

Arthur S. Phillips and Richard K. Hawes, both of Fall River, Mass., for appellees.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

This is an appeal, duly allowed by this court, under section 24b of the Bankruptcy Act (11 USCA § 47(b). It involves the question whether the sum of $5,479.29 belongs to the purchaser at a foreclosure sale of a mortgage of the bankrupt's real estate, or should be paid, so far as necessary, to 54 wage earners.

It comes before this court on a referee's certificate only. The record was so unsatisfactory that we have been constrained of our own motion under Rev. St. § 698 (28 USCA § 863), to order it supplemented by copy of the referee's order of September 22, 1925, hereinafter set forth. As on notice to counsel of both parties neither expressed a desire for further argument, we proceed to dispose of the case.

The bankrupt was a corporation in Fall River which, on August 1, 1914, issued mortgage bonds upon its real estate, of which $107,000 were outstanding on February 27, 1925, when an involuntary petition in bankruptcy was filed against it; adjudication followed on March 16; the trustee was elected on April 8, 1925.

The 1924 tax assessed by Fall River was $12,742.48; the 1925 tax, $11,801.75. The referee's report proceeds:

"On September 22, 1925, the referee in charge, George W. Stetson, on petition *filed by the bondholders*, found the taxes assessed as above to be due and payable and he ordered the trustee to pay to the City of Fall River forthwith the sum of $5,000, and the balance to be paid when funds were available. In compliance with this order the trustee did pay the sum of $5,000 in partial settlement of the 1924 taxes."

Obviously in the phrase "filed by the bondholders" the referee means the mortgagee or a representative thereof. What standing this secured creditor had to file such petition is at least doubtful.

But the supplemental record discloses the following as a true copy of Referee Stetson's order of September 22, 1925:

"The foregoing petition asking for an order to the trustee to pay certain taxes due

the city of Fall River having been duly filed and having come on for a hearing before me without notice to the creditors:

"Now after due hearing and upon reconsideration, having heard the trustee and counsel for the trust mortgage and counsel for the bondholders, and it appearing that the taxes are properly due from the estate:

"It is ordered that J. Whitney Bowen, Esq., trustee of said bankrupt, be, and he hereby is, ordered to pay forthwith Five thousand dollars on account of taxes due and that he withhold payment of the balance until it shall be determined what portion of the funds in his hands can be paid on account of taxes."

This shows that the city did not appear, apparently had no notice of the petition, and that the order did not find that the taxes for both years were then "due and payable," or order the balance above $5,000 "to be paid when funds were available."

The report continues:

"On September 24, 1925, the real property of the bankrupt was offered for sale under the power in the mortgage and was bid in by the bondholders for $100,000, subject to the terms of sale contained in the advertisement, as follows:

" 'Unpaid taxes at the time of the sale will remain a lien upon the property. Other terms made known at the time and place of sale.'

"On the date of the sale the auctioneer read the following additional conditions of sale:

" 'The total of all unpaid Municipal taxes will remain a lien on lots 1 to 6 if they are sold to a single purchaser; if sold to different purchasers the lots will remain subject to the tax lien proportionately to the purchase price.'

" 'The Estate of Marshall's Inc., is being administered in bankruptcy by the United States court for the District of Massachusetts, and these sales are being made with the approval of the referee in bankruptcy. Under section 64 of the Bankruptcy Act unpaid Municipal taxes are entitled to preferential payment which attorneys advise us are secondary only to administration expenses and superior to claims for labor.'

"In April, 1927, the bondholders who had bid in the property got an abatement of the taxes assessed as of April 1, 1924, in the sum of $7,742.48 and got an abatement on the taxes assessed as of April 1, 1925, in the sum of $5,885.70. The abatement on the 1924 tax

was an abatement of the entire balance due after the payment of the $5,000 ordered by Referee Stetson as herein stated. The bondholders paid the balance of the 1925 taxes in cash."

By "bondholders" here the referee must mean the purchaser at the auction sale, who bought merely the equity above the tax lien and was therefore equitably required to pay such taxes.

Referee Stetson died in 1926. Referee Black reported that in March, 1929, the trustee proceeded to close the estate; that he paid a few claims of wage earners, *"with the permission of the bondholders,"* and "turned the above-named balance, amounting to $5,479.29, over to the bondholders on account of the taxes which had been found due and ordered paid by Referee Stetson on September 22, 1925."

The claimant wage-earners, with the assistance of one Turner, employed by the trustee to assist in the administration, prepared their wage claims and delivered them to the trustee, in April, 1925. For present purposes the referee finds and rules that these proofs of claim were filed with the trustee within the time limited by the statute, and were valid. Orcutt Co. v. Green, 204 U. S. 96, 27 S. Ct. 195, 51 L. Ed. 390. This loss for four years of these proofs of claim is symptomatic of the general administration of this estate, which has taken nearly six years, without apparent excuse.

The referee then proceeds to dispose of the case as follows:

"The issue here is a clear one. Are the rights of wage-earners superior to the rights of bondholders who seek reimbursement for money paid to discharge taxes on the bankrupt's real estate? I believe the answer is no. By an official order of the referee in charge the taxes against this estate were found to be due and payable and by that same order the trustee was directed to pay such taxes in part and the balance as soon as possible. This order was made long before the amendment of 1926 which gave wage earners preference over taxes. By this order the liability of the estate was fixed and the fact was publicly stated at the auction sale. Any purchaser who bought that property had a right, by the conditions of sale under which he bought, to look to the bankrupt estate for reimbursement, so far as the funds of the estate permitted it, of any taxes paid by him to the City of Fall River. That right he acquired on the date of sale and is in no way affected by the fact that two years later

he was able to secure a partial abatement from the tax authorities. He bought a property at the sale and with it he acquired a certain right against the bankrupt estate. That right was not extinguished because two years later, on his own initiative, as the owner of the property, he was able to secure a beneficial abatement. The rights of the parties are in no way affected by the fact that the bondholders good naturedly permitted the trustee to pay a few of the wage claims before they received the final balance. That act was one of generosity and was not intended as a waiver of the bondholders' rights and cannot be so construed."

The court, without opinion, affirmed the referee's order. The decision against the wage-earners is thus grounded on Referee Stetson's order of September 22, 1925, erroneously interpreted as meaning that these taxes were *in their entirety, "due and payable."* But they were not thus, justly and probably not legally, due and payable; and there was no such finding or order.

Under section 64a, as amended by Act May 27, 1926, § 15 (11 USCA § 104(a), it was the duty of the trustee, in discharge of his general duty to protect the estate against illegal or excessive claims, to question the amount and legality of these taxes and to present them for determination by the court. New Jersey v. Anderson, 203 U. S. 483, 27 S. Ct. 137, 51 L. Ed. 284; In re Sheinman (D. C.) 14 F.(2d) 323; In re New England Tire & Rubber Co. (D. C.) 13 F.(2d) 1004, and cases cited; In re Lewensohn (C. C. A.) 121 F. 538. That duty was not performed. Subsequent events show that the taxes were grossly excessive; that was clear enough even at the outset.

Parenthetically, what part of these taxes was assessed upon the mortgaged real estate does not appear. But it is a fair inference that the great bulk of them were thus assessed—certainly much more than the balance of the taxes after the $5,000 payment. In this mortgaged estate, as the foreclosure result showed, the bankrupt estate had no interest whatsoever. If the amendment of 1926, which provides, inter alia, "that no order shall be made for the payment of a tax assessed against real estate of a bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court," had been in force on September 22, 1925, and invoked against these taxes, little or none of them would have been payable out of the bankrupt's estate. This aspect of the case, as well as the subsequent abatement of about half these taxes, lends strength to the view that it was the trustee's plain duty, under the then operative provision of section 64a, to question the amount and legality of these taxes.

■ The purchaser at the foreclosure auction sale bought merely land subject to a tax lien. We perceive no right in this purchaser to have the lien for taxes discharged by the general bankruptcy estate.

■ As this sum, $5,479.29, was not paid over to the purchaser by the trustee in bankruptcy until 1929, and no further order, as required by Referee Stetson's order, for the payment of this sum as taxes to the city or any one else was ever made, we have no difficulty in concluding that the amendment of 1926 was applicable and gave the wage claims priority over taxes. The case falls, in that regard, within the rulings made by this court in City of Chelsea v. Dolan (C. C. A.) 24 F.(2d) 522. As we there said in effect, with citation of authorities, there is no vested right in priorities under the Bankruptcy Act.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellants recover costs of appeal.