In re **HARVEY DISTRIBUTING CO., Inc.**

No. 17–965.

United States District Court
E. D. Virginia, Richmond Division.
Jan. 11, 1950.

Miles, Walsh, O'Brien & Morris, Baltimore, Md., for creditors.

Allers & Cochran, Balitmore, Md., for bankrupt.

Denny, Valentine & Davenport, Richmond, Va., for petitioner Coin Machine Acceptance Corp.

Shewmake, Gary, Goddin & Blackwell, Richmond, Va., for petitioner Brooks Warehouse Corp.

Perry Seay, Richmond, Va., and John O. Herrmann, Baltimore, Md., for trustee.

HUTCHESON, Chief Judge.

Harvey Distributing Company, Incorporated, a Maryland corporation, hereinafter referred to as Harvey or Trustee, was a distributor of what is known as coin-operated machines, including Wurlitzer phonographs, and among other assets had in storage with Brooks Transfer and Storage Company, Incorporated, in Richmond, 46 such machines, which are involved in the question now before the Court.

On December 1, 1947, January 23, 1948, January 28, 1948, and March 18, 1948, the Harvey corporation executed certain notes and trust receipts in accordance with the provisions of Chapter 147B of the Code of Virginia, commonly known as the Uniform Trust Receipts Act, to Coin Machine Acceptance Corporation, an Illinois corporation, hereinafter referred to as Coin Machine or Entruster. The statement provided for by Section 3848(82) of the Code of Virginia was duly filed with the Secretary of the Commonwealth on March 28, 1948. On March 4, 1949, an involuntary petition in bankruptcy was filed against Harvey in the District of Maryland and on March 21, 1949, the corporation was adjudicated a bankrupt. Ancillary proceedings were instituted in this Court on April 13, 1949, in which ancillary receivers were appointed. On May 25, 1949, Coin Machine filed in this Court a petition reciting the execution of the notes and trust receipts and the filing of the statement, and alleging that there was no equity for the benefit of the bankrupt estate in the machines covered thereby; that the bankrupt had defaulted in the payment of the notes and praying that this Court enter an order directing the ancillary receivers to abandon all claims to the machines mentioned and to account to the Court for any sum collected from the sale of machines covered by the trust agreement, and that the petitioner be treated as a preferred creditor to such extent. Thereafter, with the consent of all parties, the machines were appraised and sold by the ancillary receivers and the proceeds are held by the trustee, who in the interim had been elected and appointed trustee for the bankrupt pending disposition of these proceedings.

An order was entered by this Court on September 30, 1949, requiring persons in interest to show cause why the prayer of Coin Machine should not be granted, to which the trustee in bankruptcy has filed an answer reciting his election as trustee and contending that under the provisions of Section 60, Sub. a of the Bankruptcy Act, Title 11, U.S.C.A. § 96, sub. a, he is entitled to retain possession of the machines and that the prayer of Harvey should be denied.

Boiled down to its simplest terms, the contention of Coin Machine is that it is entitled to a lien, as a preferred creditor, on those machines covered by the trustee receipt dated March 18, 1948, from the date thereof (the statement having been filed on March 28, 1948), and on the machines covered by the remaining 3 receipts from March 28, 1948. It is the contention of the trustee in bankruptcy that under the provisions of Section 60, sub. a, a transaction such as this under the Uniform Trust Receipts Act, constitutes a preference made immediately before bankruptcy as defined in Section 60, sub. a, of the Bankruptcy Act. That Act provides as follows: "Section 60. Preferred creditors. a. A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapter 10, 11, 12, or 13 of this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. For the purposes of subdivisions a and b of this section, *a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein,* and, *if such transfer is not so perfected prior to*

*the filing of the petition in bankruptcy* or of the original petition under chapter 10, 11, 12, or 13 of this Act, *it shall be deemed to have been made immediately before bankruptcy."* (Italics supplied.)

That portion of the Uniform Trust Receipts Act pertinent in this connection is Code of Virginia, Section 3848(78) 2(a), as follows:

"Sales by trustee in the ordinary course of trade.

"(i) Where the trustee, under the trust receipt transaction, has liberty of sale and sells to a buyer in the ordinary course of trade, whether before or after the expiration of the thirty-day period specified in subsection one of section eight of this act, and whether or not filing has taken place, *such buyer takes free of the entruster's security interest in the goods so sold,* and no filing shall constitute notice of the entruster's security interest to such a buyer.

"(ii) No limitation placed by the entruster on the liberty of sale granted to the trustee shall affect a buyer in the ordinary course of trade, unless the limitation is actually known to the latter." (Italics supplied.)

Sub-Section (c) of the same section is as follows:

"Liberty of Sale.

"If the entruster consents to the placing of goods subject to a trust receipt transaction in the trustee's stock in trade or in his sales or exhibition rooms, or allows such goods to be so placed or kept, such consent or allowance shall have like effect as granting the trustee liberty of sale."

No reported case in point has been brought to my attention and counsel stated at bar that they have been unable to find such case. The case of Corn Exchange Nat. Bank & Trust Co., Philadelphia, v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884, 144 A.L.R. 1189, was cited by counsel for the trustee in bankruptcy, along with articles appearing in 32 Virginia Law Review, 910 (1946), 33 Cornell Law Quarterly, 99 (1947), 60 Harvard Law Review, 233 (1946), 33 Columbia Law Review, 40, 8 Miss. Law Review, 85 (1943), and 43 Columbia Law Review, 58 (1943). He also

cited a decision of the Referee in Bankruptcy for the District of Maryland in the case of Liberty Motors and Engineering Corporation (Bankruptcy #10-012), involving a question arising under the Factor Lien Law, enacted by the Legislature of Maryland in 1945, Laws Md. 1945, c. 1019.

Counsel for Coin Machine brought to my attention the Report of the House Committee on the Judiciary, July 29, 1937, page 30, dealing with the purpose and effect of the present amendment and an article appearing in 60 Harvard Law Review, 233, 251, by James Angell McLaughlin. Counsel for Coin Machine suggests that Corn Exchange Bank case is not analogous and points to the report of the Committee where it is stated that the contemplated purpose was to strike down secret liens, which appears to be in accord with the views of Mr. McLaughlin expressed in the Harvard Law Review. As pointed out, at the time of the action of Congress the Uniform Receipts Act was relatively new and it is not unlikely that Coin Machine is correct in its contention that Congress did not contemplate situations arising under that Act which is in derogation of common-law principles and a wide departure from such principles theretofore firmly embedded in the law of commerce.

It is clear that under the arrangement the debtor Harvey (Trustee) was in possession, with liberty to exhibit and sell the machines accounting to Coin Machine (Entruster) for the proceeds of such sale. That being true, the transfer to Coin Machine at no time prior to bankruptcy " * * * became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee (Coin Machine] therein, * * *".

Not having become so perfected, under Section 60, sub. a of the Bankruptcy Act it must be deemed to have been made immediately before a bankruptcy and therefore invalid. It is clear that if Congress had intended that such lien should be valid in bankruptcy, the italicized language of Section 60, sub. a, would not have been used.

It is suggested that counsel submit draft of proposed order carrying into effect the views here expressed.