**COIN MACHINE ACCEPTANCE CORP. v. O'DONNELL et al.**

**No. 6253.**

United States Court of Appeals Fourth Circuit.

Argued Oct. 1, 1951.

Decided Nov. 5, 1951.

774

J. Francis Ireton, Baltimore, Md. (John S. Davenport, III, and Howard C. Vick, Richmond, Va., on brief), for appellant.

John O. Herrmann, Baltimore, Md. (Perry Seay, Richmond, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a bankruptcy case involving the right to the proceeds of sale of certain coin operated machines covered by trust receipts securing indebtedness due appellant Coin Machine Acceptance Corporation. The manufacturer of the machines was paid for them by appellant under an arrangement by which they were delivered for sale to the bankrupt, a local dealer in the machines in the State of Virginia, and appellant was secured for the purchase price so advanced by trust receipts duly executed and recorded pursuant to the Uniform Trust Receipts Act, which has been adopted in Virginia. See Virginia Code of 1950, secs. 6–550 to 6–568. The machines were in the possession of the bankrupt at the time of the filing of the petition in bankruptcy but were subsequently sold by the trustee in bankruptcy under an agreement that the proceeds be held to abide the outcome of this proceeding.

There is no question but that the trust receipts were valid and properly executed and that their effect under the law of Virginia was to vest in appellant the right to the machines as against the rights of creditors of the local dealer. The trustee in bankruptcy contends, however, that the trust receipts are void as preferential trans-

fers within the meaning of section 60, sub. a, of the Bankruptcy Act as amended by the Chandler Act of 1938, 11 U.S.C.A. § 96, sub. a. The District Court so held (88 F. Supp. 466) and an appeal was taken to this court. Pending the appeal, Congress passed Public Law 461, 81st Cong. ch. 70, 2d Sess., again amending section 60, sub. a of the Bankruptcy Act and we remanded the case to the court below in order that it might reconsider the case in the light of this amendment. Upon the remand the court held that Public Law 461 had no application to the case and again held that the trust receipts were void as constituting preferential transfers by the bankrupt, and the acceptance corporation has again appealed.

It is not contended that prior to the amendment made by the Chandler Act of 1938 to section 60, sub. a of the Bankruptcy Act, there was anything in the law which would have enabled the trustee in bankruptcy to avoid the security given by the trust receipts or treat them as preferential transfers by the bankrupt. It is argued that under the amendment this result follows because the local dealer, who executed the trust receipts, was given power to sell the machines to buyers in the ordinary course of trade who would take the machines so purchased free of appellant's security interest therein. It is said that in such situation section 60, sub. a of the Bankruptcy Act, as amended by the Chandler Act, provides that the transfer of security evidenced by the trust receipt must be deemed to have been made immediately before bankruptcy when bankrupt was insolvent and hence be deemed a preferential transfer. The section relied on, as amended by the Chandler Act of 1938, is as follows: "Section 60. Preferred Creditors. —a. A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapter X, XI, XII, or XIII of this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. For the purposes of subdivisions a and b of this section, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy or of the original petition under chapter X, XI, XII or XIII of this Act, it shall be deemed to have been made immediately before bankruptcy."

The trustee relies for his position upon the language of the act and the decision of the Supreme Court in Corn Exchange Nat. Bank & Trust Co. v. Klauder, 318 U.S. 434, 63 S.Ct. 679, 683, 87 L.Ed. 884, which interpreted the language as applied to an assignment of accounts receivable. It is extremely doubtful, however, whether the language relied on, which was directed against the creation by the bankrupt of secret liens on his property, could properly be held applicable to a trust receipt which was given not for the purpose of transferring but of acquiring property, which was given in accordance with the usual method of handling merchandise in that class of business and which was placed on public record in accordance with law as notice to all the world of its provisions. The transfer of accounts receivable dealt with in the case of Corn Exchange Nat. Bank & Trust Co. v. Klauder was a very different matter and bore a fundamentally different relationship to the matter of secret liens with which Congress was dealing. As said by the Supreme Court in that case:

"Whatever advantages may inhere in non-notification financing which might have made Congress reluctant to jeopardize it, the system also has characteristics which make it impossible for us to conclude that it is to be distinguished from the secret liens Congress was admittedly trying to reach.

"Receivables often are assigned only when credit in a similar amount is not available through other channels. Interest

and other charges are high, and an assignment often is correctly understood as a symptom of financial distress. The borrower does not wish his customers to learn of his borrowing arrangement for the reason, among others, that customers, particularly in placing orders for future delivery, prefer to rely on solvent suppliers. And often the borrower desires to conceal the fact that he is being financed by this method lest knowledge lead to a withdrawal of further credit or refusal of new credit. The borrower and the lender on assigned accounts receivable thus have a mutual interest in not making the transaction known. So long as the transaction may remain a secret, it is not apt to become known to the trade. When the transaction is communicated to the trade debtors it is known where there is less motive to keep it under cover. Commercial and trade reporting agencies are diligent to obtain credit information of this character. Its dissemination may often have adverse effects upon both the borrower and the lender, but they are not the only interested parties. Secrecy has the effect of inducing others to go along with the borrower in ignorance where they would not do so if informed."

Nothing of the sort can be said with respect to the handling of property under trust receipts, where there is no secret lien and where the acquisition of unencumbered title by the purchaser is not the bringing of a secret lien to fruition but is the regular course of business followed in the automobile and domestic appliance industries, which have developed the trust agreement as a standard method of dealer financing. It is hardly reasonable to suppose that Congress intended to strike down this healthy and "above the Board" business;[1] and it is elementary that acts of Congress are to be given a reasonable interpretation and not one that leads to hardship and absurd results. Sorrells v. United States, 287 U.S. 435, 446-448, 53 S.Ct. 210, 77 L.Ed. 413 and cases there cited. As

was well said by Professor Moore and Mr. Tone in 57 Yale Law Journal 683, 698: "Recently the fear has been expressed that the bona fide purchaser test will enable the trustee to invalidate properly filed or recorded trust receipts, factor's liens, chattel mortgages on goods held for resale and similar legitimate security devices. * * * It is highly improbable that any court would reach that result. Section 60, sub. a should be interpreted in the light of its legislative history as striking at secret liens, previously protected by the doctrine of relation back, not at legitimate security devices which have been given full notoriety prescribed by state law, and which, by their very function, are designed to enable the debtor to have possession and the power of sale and hence are never perfectible as against the ordinary purchaser. Nor would the 'plain meaning' rule of interpretation preclude this view, for a distinction can readily be drawn between the traditional concept of the bona fide purchaser and that of the buyer in the ordinary course of trade."

We need not pass upon the question, however, for Congress, which intended no such result, has plainly said so and has amended section 60, sub. a of the Bankruptcy Act in such way as to remove all doubt as to what was intended, and has given the amendment retroactive application. Public Law 461, 81st Cong. ch. 70, 2d Sess., amending sec. 60, sub. a of the Bankruptcy Act, provides:

"(7) Any provision in this subdivision a to the contrary notwithstanding if the applicable law requires a transfer of property other than real property for or on account of a new and contemporaneous consideration to be perfected by recording, delivery, or otherwise, in order that no lien described in paragraph (2) could become superior to the rights of the transferee therein, * * * the time of transfer shall be determined by the following rules:

"I. Where (A) the applicable law specifies a stated period of time of not more

---

[1] The trustee in bankruptcy occupies a position much more nearly analogous to that of a transferee under a transfer in bulk, against whom the recorded trust receipt is perfectly valid (see 6-550, 6-558(2) (b) ), than to that of a buyer in ordinary course of trade.

than twenty-one days after the transfer within which recording, delivery, or some other act is required, and compliance therewith is had within such stated period of time; or where (B) the applicable law specifies no such stated period of time or where such * * * period of time is more than twenty-one days, and compliance therewith is had within twenty-one days after the transfer, the transfer shall be deemed to be made or suffered at the time of the transfer.

"II. Where compliance with the law applicable to the transfer is not had in accordance with the provisions of subparagraph I, the transfer shall be deemed to be made or suffered at the time of compliance therewith, and if such compliance is not had prior to the filing of the petition initiating a proceeding under this Act, such transfer shall be deemed to have been made or suffered immediately before the filing of such petition.

\* \* \* \* \* \*

"Sec. 4. Effect of This Amendatory Act.—a. Nothing herein contained shall have the effect to release or extinguish any penalty, forfeiture, or liability incurred under any Act or Acts of which this Act is amendatory.

"b. The provisions of this amendatory Act shall govern proceedings so far as practicable and applicable in cases pending when it takes effect; * * *."

Since the trust receipts here were promptly recorded long in advance of the insolvency of the bankrupt, there is no question but that the security of appellant was protected thereunder if public law 461 is applicable, and appellees so concede. We think that it is clearly applicable. As stated by Senator McCarren in the Senate (Cong. Record Mar. 7, 1950, vol. 96 No. 47 p. 2963) the purpose of the act was "to clarify" section 60 of the Bankruptcy Act relating to the matter of preference; and the language last quoted expressly provides that it "shall govern proceedings so far as practicable and applicable in cases pending when it takes effect". This case was pending when the act took effect. Mackenzie v. A. Engelhard & Sons Co., 266 U.S. 131, 45

S.Ct. 68, 69 L.Ed. 205. And there is no reason why its provisions should not be held applicable to the case, as they clearly are, or why it should not be held practicable to apply them. The fund derived from the sale of the machines was still in the custody of the court, the claim of appellant had been asserted promptly in the early stages of the bankruptcy proceeding and nothing had taken place which would so much as make it difficult to carry out the congressional mandate.

It is argued that general creditors acquired a vested right in the property here in question which became fixed by the adjudication of bankruptcy and that this may not be disturbed by subsequent legislation of Congress, and United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222 is relied on in support of this position; but that case holds nothing more than that R.S. 3466, 31 U.S.C.A. § 191, giving to the United States priority in payment of debts did not operate to give priority with respect to a claim acquired by the United States through subrogation after bankruptcy. Nothing is said in the case which has any tendency to limit the power of Congress to pass legislation affecting the rights of a bankrupt's general creditors, who have no lien upon or property right in specific assets. Kuehner v. Irving Trust Co., 299 U.S. 445, 451–452, 57 S.Ct. 298, 81 L.Ed. 340; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 588–589, 55 S.Ct. 854, 79 L.Ed. 1593. And see opinion of this court in Campbell v. Alleghany Corporation, 4 Cir., 75 F.2d 947, 953, holding that under the bankruptcy power Congress may impair the obligation of contracts even to the extent of affecting the security held for debts, so long as what is done is not so arbitrary and unreasonable as to be "incompatible with fundamental law."

We think there can be no question as to the power of Congress in the passage or amendment of a bankruptcy act to fix or rearrange priorities to be observed in the distribution of a bankrupt's estate, so long as the rule of uniformity is observed and there is no violation of the due process clause of the Fifth Amendment,

which is manifestly not present here. See City of Chelsea v. Dolan, 1 Cir., 24 F.2d 522; Adams v. Bowen, 1 Cir., 46 F.2d 294; In re Old Algiers, 2 Cir., 100 F.2d 374. The case last cited involved the payment of a claim which would not have been entitled to payment but for an amendment to section 77B, 11 U.S.C.A. § 207, introduced by the Chandler Act which was passed while the proceeding there was pending in court. The amendment was held to apply, the court saying that it was as practicable to apply the provisions of the amended act in the proceeding which was pending at the time of its passage as it would have been had the proceeding been instituted subsequent thereto, since the assets had not been distributed and the time for proving the claim had not expired. The same considerations apply here, since the claim of appellant has been seasonably asserted and the assets subject to the claim have not been distributed. The case of John G. Gasteiger & Co., 2 Cir., 25 F.2d 642, upon which appellee relies, was distinguished in that case and also in the case of In re Inland Dredging Corporation, 2 Cir., 61 F. 2d 765, 88 A.L.R. 254 largely on this basis. What was said by Judge Swan, speaking for the 2nd Circuit, in the Old Algiers case is of interest here. Said he [100 F.2d 375]: "Judicial support for this view may be found in decisions construing the word 'practicable' in the 1926 amendments to the Bankruptcy Act. Section 18 thereof provided that 'the provisions of this amendatory Act shall govern proceedings, so far as practicable and applicable, in bankruptcy cases pending when it takes effect; * *'. Act May 27, 1926, 44 Stat. 667. In City of Chelsea v. Dolan, 1 Cir., 24 F.2d 522, the question arose whether the amendatory provision giving wage claims priority over taxes was applicable to a pending case in which no order of distribution had been made. Since the assets of the estate were still in custodia legis and there was no difficulty in applying the new priority provisions, the court held it was clearly 'practicable' to do so. Adams v. Bowen, 1 Cir., 46 F.2d 294, accord. Similarly, the amendatory provisions relating to the burden of proof in the matter of discharge were held applicable to a pending case in Re Jones, D.C.N.D.Ga., 15 F.2d 692; as were also the provisions creating new grounds for barring the bankrupt's discharge, although as to this the cases are not in complete unanimity. In re Carter, 2 Cir., 32 F.2d 186, 188; Royal Indemnity Co. v. Cooper, 4 Cir., 26 F.2d 585, 586; contra, In re Wyatt, D.C.E.D.Va., 23 F.2d 350; Morton v. Snider, 8 Cir., 20 F.2d 469. Our own court concluded that it was not practicable to accord priority to a claim of the United States in a pending case in which the rights of creditors had become fixed by the expiration of the time for filing claims before the amendatory provisions became effective. In re John G. Gasteiger & Co., 2 Cir., 25 F.2d 642. See, also, In re Inland Dredging Corp., 2 Cir., 61 F.2d 765, 766, 88 A.L. R. 254. In the case at bar, however, as already noted, the rights of creditors had not become so fixed. Hence we do not regard the Gasteiger Case as opposed to the views above expressed as to the meaning of 'practicable' in section 276(c) (2) of the Chandler Act [11 U.S.C.A. § 676(c) (2)]."

Under the circumstances here existing we think it just as reasonable and practicable to apply the amended statute in determining the rights of appellant in the fund in question as against the rights of general creditors as it was to apply the provision of an amended statute relating to the discharge of the bankrupt as against the rights of creditors under the old act; and this we did in Royal Indemnity Co. v. Cooper, 4 Cir., 26 F.2d 585, and Lockhart v. Edel, 4 Cir., 23 F.2d 912.

For the reasons stated, the order appealed from will be reversed and the case will be remanded with direction to enter judgment for appellant for the fund in controversy.

Reversed.