407 F.2d 518
 Stephen G. CALAWAY, as Trustee in Bankruptcy of Pete Knight Television & Appliance, Inc., Bankrupt, Appellant,
v.
ADMIRAL CREDIT CORPORATION, Appellee.
Stephen G. CALAWAY, as Trustee in Bankruptcy of Pete Knight Television & Appliance, Inc., Bankrupt, Appellant,
v.
REDISCO, INC., Appellee.
 No. 12466.
 No. 12467.
 United States Court of Appeals Fourth Circuit.
 Argued December 6, 1968.
 Decided March 3, 1969.
 
 W. P. Sandridge, Jr., Winston-Salem, N. C. (Womble, Caryle, Sandridge & Rice, Winston-Salem, N. C., on the brief), for appellant.
 James B. Rivenbark, Greensboro, N. C. (Egerton, Alspaugh & Rivenbark, Greensboro, N. C., on the brief), for appellees.
 Before HAYNSWORTH, Chief Judge, BOREMAN and BUTZNER, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 On June 10, 1966, Admiral Credit Corporation and Redisco, Inc., repossessed merchandise delivered to Pete Knight Television & Appliance, Inc., under trust receipts.[1] Three days later Knight filed a petition in bankruptcy. The trustee in bankruptcy brought these actions to set aside the repossessions as voidable preferences within the meaning of § 60 of the Bankruptcy Act [11 U.S.C. § 96 (1968)]. The district judge entered final judgment for Admiral and Redisco on the ground that they had valid liens superior to any claim of the trustee in bankruptcy. We affirm.
 
 I.
 
 2
 Whether Admiral's repossession was a preference depends upon the validity of a statement of trust receipt financing recorded in the county clerk's office on March 1, 1966. The statement is attacked on two grounds: first, it lacks Admiral's signature; and second, it was filed within four months of bankruptcy.
 
 
 3
 The Uniform Trust Receipts Act [N.C.Gen.Stat. § 45-58] requires the statement to be signed by both parties to the transaction. At the foot of the document the following appears in type: "ADMIRAL CREDIT CORPORATION By:______________ Title: Attorney in fact." In determining whether this legend constitutes a signature we must apply North Carolina's rule that documents may be validly recorded if, despite formal defects, careful and prudent examiners of the record are put on reasonable inquiry. Mickel-Hopkins, Inc. v. Frassinetti, 278 F.2d 301 (4th Cir. 1960). Consideration must be given to the nature of the defect, its impact upon others, and the intention of both Knight and Admiral.
 
 
 4
 A number of reasons support the validity of the statement. The statute does not prescribe any particular form of signature. Admiral's identity was not cloaked. Indeed, even the most casual examiner of the record would learn of Admiral's participation. No third person was misled or harmed by the failure of the attorney in fact to sign. Knight intended the statement to be valid. It properly signed, acknowledged,[2] and delivered the paper to Admiral for recording, and it received merchandise for which it gave trust receipts. Admiral evidenced its intention to adopt the printed signature by submitting the document for recordation and relying on the statement in financing Knight. In the absence of North Carolina authority requiring us to disregard these practical and equitable factors, we decline to hold the statement invalid. The same result was reached in Haas v. Rendleman, 62 F. 2d 701 (4th Cir.), cert. denied, 289 U.S. 750, 53 S.Ct. 695, 77 L.Ed. 1495 (1933), where a corporate deed of trust, lacking the corporate seal required for a valid conveyance under North Carolina law, was held to be superior to the claim of a trustee in bankruptcy. And in Benedict v. Lebowitz, 346 F.2d 120 (2d Cir. 1965), a typed name in the body of a financing statement satisfied the Uniform Commercial Code's requirement that the statement be signed.
 
 
 5
 The fact that the statement was filed within four months of bankruptcy is immaterial under the circumstances of this case. For a number of years Admiral had financed Knight by the use of trust receipts. The trustee in bankruptcy concedes that a series of properly recorded statements of trust receipt financing and continuation affidavits protected Admiral's security through March 30, 1966. Admiral recorded the new statement on March 1, 1966, almost a month before the expiration of its last recordation. The filing of Admiral's new statement continued for another year "the rank of [Admiral's] existing security interest as against all junior interests," N.C.Gen.Stat. § 45-58(e) (1966), including a trustee in bankruptcy. See Re Lexington Appliance Co., 185 F.Supp. 235, 238 (D.Md.1960). We hold, therefore, that Admiral's repossession of merchandise three days before bankruptcy was not a voidable preference. Cf. Coin Machine Acceptance Corp. v. O'Donnell, 192 F.2d 773 (4th Cir. 1951); 3 & 4A Collier on Bankruptcy ¶ 60.45 at 1010 and ¶ 70.58 at 677 (1967).
 
 II.
 
 6
 Redisco's judgment depends upon the effectiveness of its effort to extend the priority of a properly recorded lien. Redisco filed its first statement of trust receipt financing on January 13, 1964. On December 14, 1964 it filed its first continuation affidavit, and on January 6, 1966 it filed a second affidavit. The parties continued trust receipt financing until shortly before bankruptcy. The trustee in bankruptcy contends that a fatal gap exists between December 16, 1965 — the anniversary of the first continuation affidavit — and the filing of the second affidavit on January 6, 1966. Redisco asserts that filing the second continuation affidavit before the second anniversary of the initial statement was sufficient to protect the priority of its lien. On this theory the district judge held Redisco's filing was timely and that its repossession was not a preference. We reach the same result as the district judge, but by a different route.
 
 
 7
 The Uniform Trust Receipts Act recognizes that ordinarily goods will be in the possession of the debtor for a short period of time. Consequently, the recordation of the initial statement creates a lien for only one year. N.C.Gen. Stat. § 45-58 (1966). See Re Lexington Appliance Co., 185 F.Supp. 235, 237 (D. Md.1960). This has the practical, economical effect of enabling an examiner of the records to determine the existence of trust receipt financing while limiting his search to one year. The priority of the original lien can be extended before it expires by filing a continuation document which "shall be valid in like manner and for like period as an original filing * * *." N.C.Gen.Stat. § 45-58(e) (1966).
 
 
 8
 We hold that the phrase, "for like period," means one year from the time the continuation document is filed. This interpretation of the Act was accepted, apparently without debate, in Re Riedl, 339 F.2d 338 (7th Cir. 1964). Only by this construction of the statute can an examiner safely rely on a year's search of the records. Thus, a creditor examining Knight's status on January 5, 1966 should be able to satisfy himself by searching the record back to January 5, 1965. Since he would find neither a financing statement nor a continuation affidavit filed during this period of time, he could assume that no lien existed on Knight's inventory. If we were to adopt Redisco's theory, the search would have to be pushed back beyond a year for an indeterminate period of time. True, in this case, the December 14, 1964 affidavit would be found without an unduly burdensome search. But if Redisco's theory were sanctioned, nothing would prevent the recordation of a statement and affidavits on consecutive days that would jointly have the effect of extending a lien for two or more years without further filing.
 
 
 9
 For these reasons, we hold the protection against junior interests that Redisco obtained by recordation lapsed from December 13, 1965 until January 6, 1966. There has been no showing, however, that any lien creditors came into existence during this interval. Redisco, therefore, did not lose the benefit of its recorded lien. In reaching this decision, we follow the teaching of Re Riedl, 339 F.2d 338 (7th Cir. 1964), mindful of North Carolina's admonition that its statute "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states * * *." N.C.Gen.Stat. § 45-63 (1966). Riedl dealt with facts substantially similar to those found here, and applying its interpretation of the Act, we reach the following conclusions. Redisco had a valid lien against Knight from the date of the initial statement. Recordation merely protected Redisco from Knight's other creditors. The lapse in recordation did not defeat Redisco's security interest, although an intervening creditor might have acquired a lien superior to Redisco's. After the gap in recordation closed on January 6, 1966, an examiner of the records would be put on notice of Redisco's lien. The repossession under claim of this lien was not a preference. Cf. Coin Machine Acceptance Corp. v. O'Donnell, 192 F.2d 773 (4th Cir. 1951); 3 Collier on Bankruptcy ¶ 60.45 at 1010 (1967). Had the petition in bankruptcy been filed between December 13, 1965 and January 6, 1966, or had the late filing occurred within four months of bankruptcy, Redisco's lien might well have been inferior to the rights of the trustee in bankruptcy.
 
 
 10
 Finally, we agree with the district judge that the Act allows more than one continuation document, and that minor errors in the continuation documents were cured by reference to the original document, which contained no defects. A reasonably prudent examiner could not have possibly been misled.
 
 
 11
 The judgments of the district court are affirmed.
 
 
 
 Notes:
 
 
 [1]
 The transactions were governed by the Uniform Trust Receipts Act, N.C.Gen. Stat. §§ 45-46, et seq. (1966). The Act was repealed June 30, 1967 when the Uniform Commercial Code went into effect
 
 
 [2]
 Only Knight (the trustee) was required to acknowledge execution. N.C.Gen.Stat. § 45-58