## SODY SALABES *vs.* JACOB CASTELBERG ET AL.

*Chattel Mortgage of Diamond Ring—Description—Trover by Mortgagee Against a Pledgee of the Ring—Affidavit to Mortgage.*

A diamond ring may be made the subject of a chattel mortgage.

A mortgage of a diamond ring, which was duly recorded, described the property as follows : one single stone diamond ring, Tiffany setting, diamond weighing 7-8 1-64 karats, 6583 Iahs, the property to be retained by the mortgagor in Baltimore City, Md., at No. 703 Portland st. There were no marks of identification on the ring. *Held*, that this description is sufficient being such as would enable third persons to identify the property when aided by inquiries which the mortgage indicates, and therefore the mortgage was constructive notice to third parties dealing with the ring.

One L. bought a diamond ring from the plaintiffs and executed a chattel mortgage thereof to secure the payment of the balance of the purchase-money. The mortgage provided that if the payments be not made as therein stipulated the whole debt should become due and the mortgagees should have the right to take possession of the property. It also prohibited L. from selling or disposing of the article. After making some payments on the mortgage L. pawned the ring to the defendant and was in default under the mortgage. In an action of trover by the mortgagees the jury were instructed to deduct from the value of the ring the sums paid by L. to the plaintiffs on account thereof. *Held*, that in this action evidence is not admissible on behalf of the defendant to show that the plaintiffs had agreed with L. that if the latter would surrender the pawn ticket, plaintiffs would pay the amount advanced by the defendant and the mortgage considered settled, and that L. did give the pawn ticket to the plaintiffs.

Where a chattel mortgage was given to secure the payment of the price of the article and it did not provide for the payment of interest on the debt, it was not necessary that an affidavit of the mortgagee be annexed stating that he did not require the mortgagor to pay the tax levied on the interest. Such affidavit was required by Code, Art. 81, sec. 146D. only in cases where the mortgage provided for the payment of interest.

Appeal from the Superior Court of Baltimore City (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Benj. Rosenheim*, for the appellant.

The description of the ring was indefinite and uncertain. Art. 21, secs. 45 and 41 of the Code, p. 262, requires that all chattel mortgages and bills of sale shall contain a description of the articles conveyed. Where a statute requires that a mortgage shall contain the description of the property, it necessarily means an efficient and full description, so that the same may be easily and readily known or distinguished from other property of the same kind. *Fersner* v. *Bradley*, 87 Md. 489.

There is no evidence in the record to show that the ring which the appellants received from Linthicum in pawn *answers the description* of the ring covered by the chattel mortgage. There is no evidence to show the weight of the diamond, or that the ring ever had any marks on it. That it is the same ring purchased by Linthicum from the appellees, may be conceded, but unless the ring is shown to have borne marks and to have been of the precise description as set out in the mortgage, the appellants were not bound by constructive notice. There is not only no attempt to show that it answered the description of the ring mentioned in the mortgage, but on the contrary, it was conclusively shown that there was no mark of identification on the ring in controversy by which anyone dealing with it could have known that it was the identical ring referred to in the chattel mortgage.

(*b*) An article of wearing apparel, or an ornament which adorns the person, and which attends the person in his daily walks of life, is not the subject of a chattel mortgage. For to hold otherwise, it might be the means of perpetrating a fraud upon innocent purchasers for value. A person dealing with another who is in possession and apparent ownership, has a perfect right to believe him to be the true owner.

(*c*) The mortgage is *invalid* as to third persons, because of the absence of an affidavit of the mortgagee's, endorsed thereon that the mortgagor was not required to pay the tax levied upon the interest. Art. 81, sec. 146-d-1, Code Supplement.

The evidence to show that the acquisition by the appellees

of Linthicum's equity of redemption, and the assumption by them of Linthicum's debt to the appellants, and the ratification by the appellees of the pledge of the ring by Linthicum to the appellants, should have been admitted.

There was a complete novation. Linthicum owed the appellees $52, having paid $68 on account of the $120, and he owed to the appellants $65. The appellees could well afford to pay to the appellants their advances to Linthicum, as they amounted to less than what Linthicum had already paid to them, the appellees. That is to say, had the appellees paid to the appellants the $65 due them by Linthicum, the appellees would have become entitled to the ring plus $3, being the amount paid to them by Linthicum in excess of the $65 necessary to redeem the pledge. Having, in fact, received from Linthicum the pawn ticket, which was by its terms transferable (6) upon the faith of their promise to redeem the pledge, and to cancel the mortgage from them to Linthicum the appellees thereby became liable to the appellants for the advances from the appellants to Linthicum, and, at the same time, ratified the pledge. *George* v. *B. S. Andrews*, 60 Md. 33; *Stokes & Haines* v. *Detrick & Bradley*, 75 Md. 261.

It is settled that where a mortgagee of chattels, with knowledge that they have been sold by the mortgagor for their full value, accepts the proceeds of a sale, and credits the same on the mortgrge debt, he is estopped from asserting any right to the property under the mortgage. *Field* v. *Doyon*, 64 Wis. 560. So again, if the owner of a chattel, which has been sold on credit as the property of another, accepts and collects for his own benefit a promissory note, known by him to have been given by the vendee for the purchase-money, he is thereby estopped from asserting title as against the vendee. *Moore* v. *Hill*, 85 N. C. 218.

The mortgagees (appellees) having received the sum of $68 from Linthicum on account of the purchase-money for the ring, and also the pawn ticket, or receipt, with the express understanding that they were to pay to the appellants the amount of the advance, and the mortgage was to be considered extin-

guished, ought not in equity and good conscience be permitted to violate their agreement.    The consideration for the promise was the surrender of the pawn ticket for the pledge and the right to retain the difference between Linthicum's payments to them and the amount necessary to be paid by them to redeem the pledge.   *McFadden* v. *O'Donnell*, 18 Cal. 160; *Herzog* v. *Sawyer*, 61 Md. 344; *Ackla* v. *Ackla*, 6 Penn. 228; *Wallis* v. *Long*, 16 Ala. 738.

*Martin Lehmayer* (with whom was *Louis N. Frank* on the brief), for the appellees.

In general, any personal property which is capable of being sold may be mortgaged.    5 *Am. & Eng. Ency. of Law*, 2 ed. 974; *Jones on Chattel Mortgages*, sec. 114; *Lawson's Rights, Remedies, &c.*, vol. 6, sec. 3079; *Herman on Chattel Mortgages*, sec. 36.

The evidence as to the agreement between Linthicum and the appellees was inadmissible (*a*) because the alleged promise was made without any consideration moving to the appellees, the mortgagees, and was, as far as they are concerned, a *nudum pactum*.    Linthicum, in giving up the pawn ticket simply *did less* than what by the law and by his contract, he was obliged to do.    It is a well-settled rule of law that neither the promise to do a thing nor the actual doing of it, will be a good consideration, if it be the thing which the party is bound to do by the general law or by a subsisting contract.    6 *Am. & Eng. Ency.*, 750, 756.

"The almost uniform current of authority in this country is, that neither performance nor promise of performance of what one is already bound to do by contract with a third person, is a sufficient consideration to support a promise."    8 *Harvard Law. Rev.* 38.    The following cases furnish practical illustrations of the application of the rule.   *Wendover* v. *Baker*, 121 Mo. 294; *Crosby* v. *Wood*, 6 N. Y. 369; *Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Hamer* v. *Sidway*, 124 N. Y. 548; *Robinson* v. *Jewett*, 116 N. Y. 40; *Hill* v. *Beebe*, 13 N. Y. 556; *Withers* v. *Ewing*, 40 Ohio St. 406, 407; *Esterly Harvesting Machine*

*Co.* v. *Pringle*, 41 Neb. (1894), 265; *Allen* v. *Plasmeyere*, 90 N. W. 1125 (Neb. 1902); *Lingenfelder et al.* v. *Wainwright*, 103 Mo. 578; *Conover* v. *Stillwell*, 34 N. J. L. 54; *Ritenour* v. *Mathews*, 42 Ind. 7, 14; *Schuler* v. *Myton*, 48 Kan. 282; *Westcott* v. *Mitchell*, 95 Me. 377; *Ayres* v. *C. R. I. & P. R. R.* 52 Iowa, 478; *Martin* v. *Armstrong*, 62 S. W. Rep. 83; *Holmes* v. *Boyd, Cashier*, 90 Ind. 332; *Morgan* v. *Hodges*, 15 L. R. A. 438; *Seyboldt* v. *N. Y. L. E. R. R.* 95 N. Y. 575; *Abbott* v. *Doane*, 163 Mass. 433; is reported in 34 L. R. A., p. 33. This decision is contrary to the great weight of authority and the editor of the notes to this very case expressly so states.

At the period covered by the rejected proffer, Linthicum *was in default.* He had parted with the possession of the ring, he had removed it from 703 Portland street, and for this reason and also under the insecurity clause of the mortgage, the appellees were entitled to possession at that time. If the Castelberg's had then taken possession of the ring, *Linthicum could not have successfully sued them in an action at law. Jamieson* v. *Bruce*, 6 G. & J. 72.

(*b*) The evidence sought to be admitted under the proposed proffer, would have contradicted and varied the mortgage, which is an instrument under seal. It is contradictory to the clause at the conclusion of the mortgage, which states that "No stipulation herein contained shall be deemed rescinded as against the mortgagees unless such rescission is in writing and signed by the mortgagee." *Harvey* v. *McAdams*, 32 Mich. 472; *State, use Barnard*, v. *Gott*, 44 Md. 342, 346, 347; *Zihlman* v. *Cumberland Glass Co.*, 74 Md. 303, 310, 311; *Connor* v. *Groh*, 90 Md. 674, 683, 684; *Dixon* v. *Clayville*, 44 Md. 573, 578, 579; *Nally* v. *Long*, 71 Md. 585, 587; *Abbott* v. *Gatch*, 13 Md. 315, 330, 331; *Patchin* v. *Pierce*, 12 Wend. (N. Y.) 61; *Jones on Chattel Mortgages*, 4 ed., secs. 67, 91; *Farrow* v. *Hayes*, 51 Md. 498–505; *Cassard, use of Oehm*, v. *McGlannan & Hall*, 88 Md. 168; *Blackistone* v. *German Bank*, 87 Md· 302.

Parol evidence is not admissible to contradict the terms of a mortgage, (*Jones on Chattel Mortgages*, secs, 64, 67), nor to substitute different conditions. *Ibid*, sec. 91.

(*c*) Salabes, the appellant, was not a party to the agreement set out in the proffer and there is no privity between Salabes and the appellees, and there never was any duty or obligation whatsoever, owing by the appellees to the appellant.

The correct modern rule is laid down by the Court of Appeals of New York, cited by the Supreme Court of the United States in *Constable* v. *National Steamship Co.*, 154 U. S. 51, where it is said: "It is by no means a universal rule that a person may sue upon a contract made for his benefit, to which he was not a party, *Hendrick* v. *Lindsay*, 93 U. S. 143; *National Bank* v. *Grand Lodge*, 98 U. S. 123; *Keller* v. *Ashford*, 133 U. S. 610; *Cragin* v. *Lovell*, 109 U. S. 194; *Willard* v. *Wood*, 135 U. S. 309.   *   *   *   *   As observed by the Court of Appeals of New York in *Simpson* v. *Brown*, 68 N. Y. 355.   'It is not every promise made by one to another, from the performance of which a benefit may enure to a third, which gives a right of action to such third person, he being neither privy to the contract nor to the consideration.   The contract must be made for his benefit, *as its object* and he must be the party intended to be benefited.'   See also *Natoinal Bank* v. *Grand Lodge*, 98 U. S. 123; *Garnsey* v. *Rodgers*, 47 N. Y. 233.   See also *Durnherr* v. *Rau*, 135 N. Y. 219; *Hammon on Contracts*, sec. 332, p. 674; *Brantly on Contracts*, ch. 8; *Meech* v. *Ensign*, 49 Conn. 191; *Mellin, Admr.*, v. *Whipple*, 1 Gray (Mass.), 317.

Boyd, J., delivered the opinion of the Court.

The appellees sued the appellant in trover for the conversion to his own use of a diamond ring, which one William B. Linthicum had mortgaged to them.   The mortgage is dated the 27th of October, 1900, and was given to secure the sum of $120 payable in weekly installments of $2 per week.  Linthicum had paid the appellees $68, and the verdict was for only $52, being the balance due.   On the 11th of December, 1900, Linthicum obtained $65 on the ring from the appellant, who was a pawnbroker, and on September 20th, 1901, a new ticket was issued for that sum, which was payable in six

months.   There are six bills of exception in the record—the first five presenting rulings of the Court below on the admissibility of testimony, and the 6th embracing the prayers.

1. The first was to the ruling of the Court in admitting the mortgage in evidence, to which the defendant objected because,

(*a*) The description of the property in the mortgage is too indefinite and uncertain,

(*b*) A ring being an article of personal adornment cannot be the subject of a chattel mortgage,

(*c*) There was not annexed to the mortgage an affidavit of the mortgagees that they did not require the mortgagor to pay the tax levied upon the interest, etc.

These objections were based on the theory that the appellant claimed to be (and the record does not show the contrary) in the position of an innocent purchaser for value, without actual notice of the mortgage, and he does not contend that the mortgage would not be valid between the parties.   We must, therefore, consider the question from the standpoint of an innocent third person who had no notice of the mortgage, except such constructive notice as results from the recording of it.   If the appellant is right in his position that a ring cannot be the subject of a chattel mortgage, that will end the controversy, and we will, therefore, first consider it.   The general rule is that all personal property capable of being sold can be mortgaged.   5 *A. & E. Encyc. of L.* (2 ed.), 974; 6 *Cyc.* 1037. Our testamentary law contemplates jewelry being included in the appraisement of a decedent's estate (sec. 217 of Art. 93 of the Code) and we have no statute that in any wise interferes with the owner mortgaging or making other disposition of it. A chattel is defined in Bouvier's Law Dictionary to be "Every species of property movable or immovable which is less than a freehold," and the same definition is given in substance in *Devecmon* v. *Devecmon*, 43 Md. 347.   In *Bouvier* it is also said that "Personal chattels are properly things movable, which may be carried about by the owner such as animals, household stuff, money, *jewels*, corn, garments, and everything else that can

be put in motion and transferred from one place to another."
As a diamond ring is manifestly within the definition of a
chattel, there would seem to be no valid reason, in the absence
of a statute prohibiting it, why such property cannot be the
subject of a chattel mortgage. Under our statute a mortgage
of personal property must be recorded in the county or city
where the mortgagor resides, within twenty days from its date,
or if he resides out of the State, it must be recorded in the
county or city where the property is located, secs. 44 and 45
of Art. 21 of the Code, and the statute was complied with in
that respect in this case. Any one dealing with that class of
property takes more or less risk, but he can protect himself to
some extent by making inquiries of the owner and examining
the records where he lives, etc. So without further extending
the discussion of that question, we are of the opinion that a
diamond ring may be the subject of a chattel mortgage.

The description given in the mortgage is "the following
property and chattels, one single stone diamond ring, Tiffany
setting, diamond weighing 7-8 1-64 karats, 6583 Iahs." It
also provided "that the aforesaid chattels shall until default be
retained by the mortgagor in the city of Baltimore, State of
Maryland, at No. 703 Portland st. *street*, and they shall not
be removed without the written consent of the mortgagees."
In 6 *Cyc.* 1022, it is said in an article by Mr. Jones, the well-
known author on this and other subjects, that "As against
third persons the mortgage must point out the subject-matter
so that the third person may identify the property covered by
the aid of such inquiries as the instrument itself suggests,"
and many cases are cited in the notes. In the 5 *A. & E.
Ency. of L.*, 956, the rule is stated thus : "If the description
in a chattel mortgage is such as will enable third persons to
identify the property, aided by the inquiries which the mort-
gage itself indicates and directs, the mortgage when recorded
is constructive notice to parties purchasing in good faith and
for a valuable consideration." The description of this ring as
given in the mortgage was certainly "such as will enable third
persons to identify the property, aided by the inquiries which

the mortgage itself indicates and directs." The appellant tes- tified that there were no marks of identification on the ring, and that the only way he could determine the weight would be to remove the stone from the setting and weigh it on a diamond scale, that any other judgment would be only guess work. He also explained that by Tiffany setting is meant one that was first made by Mr. Tiffany of New York, and it had taken its name from him, "but every jeweler in the United States manufactures that setting." That was perhaps rather a broad statement but if it be correct it would seem to be difficult to describe a ring like this more accurately than was done in this mortgage. In answer to a question by the Court as to whether a witness, who was a clerk of the appellant, could suggest any way by which a fuller description could be made, he replied "I think the ring could have been distinguished as a Tiffany setting, giving the weight of the thing complete as it was, and giving the finger size of the ring, which would be a more accurate description, even that would not be sufficient to identify the ring after it had been away probably three months from the original owner." The means of identification suggested by this witness do not seem to be much if any more accurate than those adopted by the appellees—indeed when it is remembered that the number of the residence of the mortgagor on Portland street in the city of Baltimore is given, together with the other description, it would be difficult to make it more accurate. The record does not explain the meaning of "6583 Iahs," but it was shown that the ring pawned by Linthicum is the same one that was purchased from the appellees, and if the appellant had examined the record he would have received such information as to put him on inquiry to further identify the ring. This case differs materially from that of *Fersner* v. *Bradley*, 87 Md. 488. There the bill of sale simply described the property as "one-half interest in eight horses," without saying where they were or giving any other description of them. We said "property of that character should be described with at least reasonable certainty. The age, color, name, some distinctive mark, or

something by which the animal could be to some extent iden-
tified should be given." And so the vehicles there referred
to were capable of more definite · description than was given.
But in this case as the only description that could reasonably
be expected was given, and that was ample to put persons
dealing with the ring on inquiry, the mortgagees should not
be made to suffer. It is not pretended that the appellant was
misled by the description that was given, and if he had read
the mortgage and had seen that Wm. B. Linthicum, who
lived at 703 Portland street, in the city of Baltimore, had un-
dertaken to secure the appellees by mortgaging a ring such
as is described, it would have been utterly inexcusable in him
to accept such a ring from the same Wm. B. Linthicum. Any
person of ordinary intelligence would be warned by the in-
formation given in the mortgage not to accept such a ring as
is therein described from Linthicum and after all that is the
great object in recording chattel mortgages. Pawnbrokers
might protect themselves, as well as owners of property and
mortgagees, from the fraudulent conduct of those pawning
goods by making more thorough inquiries than seem to have
been made in this case. The ticket issued by the appellant,
which is made transferable on its face, gives a much more in-
definite description than is found in the mortgage. We are
of the opinion that the description was sufficient and the re-
cording of the mortgage was constructive notice to the ap-
pellant.

Nor do we think that the failure to annex to the mortgage
an affidavit of the mortgagees that they did not require the
mortgagor to pay the tax levied upon the interest, etc., inval-
idates it. There is no covenant to pay any interest in the
mortgage. It was given to secure the payment of the pur-
chase-money which was payable in installments. Sec. 146A
of Art. 81 requires mortgagees to "annually pay a tax of
eight *per centum* upon the gross amount of interest covenanted
to be paid each year to said mortgagee, or his assigns, by the
mortgagor." Sec. 146D of that Article, as in force when the
mortgage was given, provided for any person lending money

on mortgage upon property in this State making affidavit "to the effect that he has not required the mortgagor, his agent or attorney, or any person for the said mortgagor, to pay the tax levied upon the interest *warranted* to be paid in advance, or will he require the same to be paid by the mortgagor or any person for him during the existence of said mortgage." The word "warranted" was evidently intended to be "covenanted," and this section as amended by Act of 1902, ch. 26, uses the latter term.   There was no interest provided for in this mortgage, and hence the provision requiring the affidavit is not applicable.   We do not mean to say that if interest was included in these payments, the statute could not be applied merely because the parties covered it up by putting it in the form of principal, although it was in fact interest, but there is no evidence of that, and so far as the case is presented by the record it was simply a mortgage to secure the purchase-money payable in installments and does not provide for the payment of any interest.   It is therefore unnecessary to consider the Act of 1902, ch. 102, which is "An Act to make valid mortgages and assignments of mortgages defectively sworn to and recorded since the tenth day of April, in the year nineteen hundred," or other questions affecting this branch of the case.

2. The second and fourth bills of exception can be considered together.   The defendant offered to prove by Linthicum, the mortgagor, that in June, 1901, one of the mortgagees agreed with him that if he would give them the pawn ticket for the ring, they would pay the amount advanced thereon by the defendant, that the mortgage should be considered settled, the transaction extinguished and that he, Linthicum, did in fact give the pawn ticket to one of the mortgagees.   The same testimony was offered to be proven by Mrs. Linthicum and on objection the Court refused to allow that evidence to be given, and its rulings are presented by these two bills of exception. It is difficult to understand upon what theory that testimony could have been admissible under the circumstances of this case.   There can be no doubt that at that time Linthicum was in default under the terms of the mortgage, and the appellees

were entitled to the possession of the ring.    It was clearly the
duty of Linthicum to surrender the pawn ticket if that in any
way interfered with the appellees getting possession of it.    The
mortgage provided that on default of payment of any install-
ment "or if the mortgagor shall sell or assign said chattels or
any part thereof, then the whole debt shall at the option of
the mortgagees without notice of said option to any one, and
without demand, become at once due and payable and the said
mortgagees shall thereupon have the right, without any de-
mand whatsoever to take possession of said property," &c.
After providing for a sale of the property, paying all costs and
charges, etc., it concludes "No stipulation herein contained
shall be deemed rescinded as against said mortgagees, unless
such rescission is in writing and signed by said mortgagee."
Linthicum was expressly prohibited from selling or assigning
the ring, and therefore the appellant had no right to accept it
from him, and if he chose to do so, in opposition to the terms
of the mortgage, of which we have said he had constructive
notice, he must take the consequences, at least in a suit at law.
It is true that Linthicum had an equity of redemption, and the
appellant as his assignee could likewise have redeemed the
ring, but he could not have done that without paying the ap-
pellees the balance due them on the mortgage.    Although
this is a suit at law, the appellees have only demanded of the
appellant what he would have been required to do in equity,
and therefore he is not injured by the verdict.

3. In view of what we have already said, it would be useless
to discuss the third and fifth exceptions, and it is only necessary
to say that the Court was right in those rulings.    The appel-
lant has no reason to complain of the prayers granted for the
plaintiffs, which limited the right of recovery to the principal
still due the mortgagees, and then only provided the jury found
that that amount did not exceed the value of the ring.    The
prayer offered by the defendant himself contained everything
that was necessary to enable the plaintiffs to recover what they
did.    It instructed the jury that if they found that the plain-
tiffs sold the ring to Linthicum for $120 and to secure the

purchase-money Linthicum executed and delivered the mortgage and that he had paid $68 on account of the purchase-money "then the plaintiffs are entitled to recover, and in estimating the damage or amount to which the said plaintiffs shall be entitled, they shall deduct from the amount of said one hundred and twenty dollars ($120), the amount paid by the said William B. Linthicum on account thereof." That is precisely what the jury did, and did not even allow interest.

It is unnecessary to discuss the other questions suggested by counsel, although they have shown great industry and ability in presenting them. Under our view of the case they need not be determined and the judgment will be affirmed for the reasons we have given.

> *Jndgment affirmed, the appellant to pay the costs.*

(Decided February 19th, 1904.)