**In re YOST et al.**

No. 10282.

United States District Court
D. Maryland.

Oct. 3, 1952.

Solomon B. Levin, Baltimore, Md., for petitioners.

Irving B. Grandberg, Baltimore, Md., for trustee.

CHESNUT, District Judge.

In this case the Redisco Corporation, a finance company, has petitioned for review of the order of the Referee. The case presents for consideration the comparatively new form of financing regulated by the so-called Uniform Trust Receipts Act which was adopted in Maryland by chapter 268 of the Acts of 1941 and is codified as Article 95½ of Flack's Maryland Annotated Code, Supplemental Edition of 1947. Counsel state that there are no Maryland decisions under this new Act which, however, it appears had been adopted by 29 States by 1951. The Act may also be found in Uniform Laws Annotated, 9a Miscellaneous, pages 284 to 317, with annotations as to the several sections and with an explanation of its purpose by the National Conference of Commissioners on Uniform State Laws in 1933 (see pp. 274–283).

The question presently presented arose in the administration of the bankrupt estate of the copartnership of Yost, Sr., and Yost, Jr., who were engaged in the business of selling electronic articles including, among other things, refrigerators. The Redisco Corporation filed a petition for reclamation of certain refrigerators, asserting that they held valid security liens thereon or were otherwise entitled thereto. This petition was resisted by the Trustee in bankruptcy and as a result of a hearing and the taking of testimony the Referee determined that articles of the value of about $5,000 were properly recoverable by the Redisco Corporation but that other articles of the value of about $4,000 were not so recoverable. He therefore passed his orders, dated June 18 and July 12, 1952, to that effect and this petition for review has resulted. The case has been fully argued by counsel on both sides with helpful briefs supplied to the court, and my conclusion after consideration of the matter is that the order of the Referee must be and hereby is affirmed.

The Referee's order to the extent that it denied the petition for reclamation was based on the facts that as to certain of the articles claimed by Redisco no trust receipts had been executed or delivered by the bankrupt to Redisco. And as to the other articles, the return of which was denied, Redisco held no trust receipts designating them although Redisco claimed that these other articles had been substituted for articles which had themselves originally been covered by trust receipts.

Counsel have not been able to find or cite any judicial decisions dealing with the points here presented under the Uniform Trust Receipts Act. It is necessary, therefore, to briefly state the main purposes of the Trust Receipts Act of Maryland as found in the statute which covers about 10 pages of closely printed matter with many sections and subsections. In general the scheme of the Act is that if a trader desires to finance the purchase of stock in trade he may enter into an arrangement with a finance company and file a statement of the making of such agreement with the State Tax Commission of Maryland. The filing and recording of this agreement and the form thereof is provided for by section 13 of the Act. The

form and contents is extremely general in nature, is titled "Trust Receipt Financing" and recites in a few lines only the name of the entruster (the finance company), the place of its business, that it expected to be engaged in financing under trust receipt transactions, the acquisition by the trustee (the dealer) with designation of its place of business and the statement signed by the finance company as entruster and the dealer as trustee. The only required description of the goods so to be financially dealt in is by naming the general character or kind of goods such as "coffee, silk, automobiles or the like". In the instant case the type of goods referred to by the statement filed with the State Tax Commission by the Redisco Corporation as entruster and the bankrupt as trustee was "household and commercial appliances".

What occurs in actual business practice, as I have been able to gather it from the papers in the case and the arguments of counsel, at least with respect to the particular case, is this. A dealer without sufficient capital to pay for goods directly, as for instance electric refrigerators, places an order with a manufacturer or wholesaler for such goods as he desires. Then the manufacturer or wholesaler communicates with the finance company named by the dealer who in turn authorizes the manufacturer to sell and deliver specified quantities of goods to the dealer on the credit or guarantee of payment by the finance company. Then when the goods are delivered by the manufacturer to the dealer the latter as trustee executes a writing called a trust receipt which must "designate" the goods covered by the receipt. The Act provides that when all these provisions have been complied with the finance company (Redisco in this case) has a valid security for the goods designated in the trust receipt which is delivered to and held by it and which is enforceable by it against the goods themselves as against, for instance, a trustee in bankruptcy. The agreement between the finance company and the dealer also, I understand, generally provides that the dealer must pay the finance company initially at least ten per cent. of the invoice value of the goods from the manufacturer, and as between the parties at least the dealer is not at liberty to sell the goods except at a specified minimum price.

I think it is quite important to note that the trust receipts themselves are not required to be recorded or in any way actually or constructively brought to the notice of general creditors of the trader except in so far as such general creditors receive constructive notice that there is an outstanding trust receipt agreement on file with the State Tax Commission of Maryland. Presumably in Maryland such filing with the State Tax Commission at Annapolis is good constructive notice to any creditor anywhere in the State of Maryland. This varies from similar constructive notice provisions with regard to chattel mortgages and retention of title under conditional sales agreements which ordinarily must be recorded in some particular county, as for instance where the mortgagor or vendee resides. It may also be noted that after the making of such a general agreement between the dealer and the finance company the latter is protected by trust receipts if given for thirty days before the filed general statement is recorded. I mention these matters only to indicate what would seem to be very great liberality in favor of this type of financing by finance companies. As the Act has been adopted by so many States it is a reasonable assumption that it has received general approval.

As I understand the particular transaction, the articles are sold by the manufacturer or wholesaler to the dealer who gets a good title thereto subject only to the secured interest therein in favor of the finance company when, but only when, the trust receipts are actually executed by the dealer.

In the instant case by inadvertence or inattention or otherwise, the finance company was unable to produce or show the existence of any executed trust receipt with respect to some of the articles which it sought to reclaim. As to other articles not successfully reclaimed, the finance company had certain trust receipts which, how-

ever, did not properly designate the particular articles of goods which were sought to be reclaimed, the contention by the finance company being that the goods properly described in the receipts were for some reason not to be found in the possession of the bankrupt but that other articles of the same general nature, and possibly of the same general value but with different particular. designation or identification, had been substituted for the originals. To explain this Redisco offered testimony that such substitutions were made at times by reason of the return by the bankrupt of defective merchandise which had been replaced with other merchandise of the same class by the manufacturer or wholesaler from whom it had been ordered; but that the replaced merchandise had a different serial number such as for instance the motor number on an automobile which serves to designate it from other automobiles of the same make and model.

The Trustee in Bankruptcy seemingly relies upon section 60, sub. a(2, 6), as amended in 1950. See 11 U.S.C.A. § 96, sub. a(2, 6). In Coin Machine Acceptance Corp. v. O'Donnell, Trustee, 4 Cir., 192 F.2d 773, the court held that section 60, sub. a(1, 2) of the Bankruptcy Act, as amended in 1950 did not have the effect of invalidating the title of a finance company holding trust receipts where the Trust Receipts Act had been complied with. I note that in the opinion in the case, 192 F.2d at page 774, it was stated that the trust receipts were "duly executed and recorded pursuant to the Uniform Trust Receipts Act, which has been adopted in Virginia." As previously stated, in the instant case the trust receipts were not recorded and it appears that under the Trust Receipts Act they are not required to be recorded, although the general statement of agreement heretofore referred to must be recorded. Of course if the trust receipts themselves were recorded they would be constructive notice to general creditors as in the case of chattel mortgages or conditional sales agreements. Counsel in the instant case states that in inquiry from counsel in the Coin Machine Acceptance case, supra, he was informed

that there was no question in the latter case that although the trust receipts themselves had not been recorded, the Trust Receipts Act had in the particular case been fully complied with. The contention of the Trustee in bankruptcy here is that as there were no trust receipts held by the finance company properly describing the articles sought to be reclaimed, the Act had not here been complied with.

■ The production of a trust receipt or a writing promising to give it is an essential feature of the Act to protect the entruster against lien creditors such as a Trustee in Bankruptcy. This is made clear by the explanatory statement of the National Conference of Commissioners in section F(4) (see p. 282) of Uniform Laws Annotated, 9(a)–Miscellaneous, which, under the heading "What the Act does for Creditors (Lien Creditors and General Creditors) of the Trustee" says:

> "4. It requires trust receipt entrusters to have their rights evidenced by a signed writing. Sec. 2(1) (i) and (ii) and Sec. 4(1)."

And it will be noted that section 2(1) (i) provides that the delivery to the dealer "must be against the signing and delivery by the trustee of a writing designating goods, documents or instruments concerned, and reciting that a security interest therein remains in or will remain in, or has passed to or will pass to, the entruster or (II) be pursuant to a prior or concurrent written and signed agreement of the trustee to give such a writing." See also sec. 8 of the Act entitled "Validity Against Creditors". As there were no trust receipts or executed writing held by Redisco properly designating the articles sought to be reclaimed, it seems to follow from the very provisions of the Act that the reclamation claim of Redisco in this case must fail.

■ Counsel for Redisco submit some other contentions in support of its claim. With respect to the so-called substituted articles, not properly designated by a trust receipt or equivalent writing, counsel points to one of the printed provisions of some of the trust receipts held by Redisco

which purports to give to the entruster a right of substitution. It is also contended that at the inception of the agreement between Redisco and the bankrupt a book of general instructions was given by Redisco to the bankrupt which outlined the general course of dealings; and it is argued from this that the bankrupt should be held to have thereby agreed to hold any substituted goods as secured to the entruster. But while such understandings or agreements may be valid as between the parties, I do not think they are a sufficient compliance with the requirements of the Act as against creditors.

Counsel for Redisco contends that the substituted articles were really of the same general kind and value as those for which they had been substituted and that therefore in equity the mere failure to correctly designate them by a trust receipt should be disregarded as immaterial. But counsel agree that there is no adjudication supporting such a contention and in view of the very meticulous provisions of the Act itself and the liberality of its provisions in favor of the entruster it was the view of the Referee, in which I concur, that there should not be further liberalization of the Act by judicial decision as against creditors without notice. The Act makes very simple requirements of the entruster to protect his interests. It seems only reasonable to require him to carefully comply with the provisions of the Act. Where substitutions of different articles are made he should have obtained a new trust receipt designating the substituted article.

Another contention submitted by counsel for Redisco is that looking at the whole nature of the transaction, the delivery of the articles, whether original or substituted, should be treated as a "consignment" for sale only and thus protected against creditors. But I think this contention is not sound because it was not in accordance with the intention of the parties who very clearly intended their actions to be governed by the Trust Receipts Act.

For these reasons I have concluded, as I have said, that the order of the Referee should be and hereby is affirmed