117 F.Supp. 590 (1954)
In re NICKULAS.
REFRIGERATOR DISCOUNT CORP.
v.
TATELBAUM.
No. 10341.
United States District Court D. Maryland.
January 18, 1954.
Solomon Levin, Baltimore, Md., for claimant.
Irving B. Grandberg, Baltimore, Md., for trustee.
CHESNUT, District Judge.
In the course of administration of the bankruptcy estate of Francis A. Nickulas, individually and trading as Manor Sales Furniture Store, the Refrigerator Discount Corporation (hereinafter called "Redisco") filed a petition for the reclamation of ten articles consisting of eight refrigerators, a freezer and a range, on the ground that the title to these articles had never passed to the *591 bankrupt or to the trustee but were retained by Redisco under the authority of the Maryland statute known as the Trust Receipts Act, Article 95½, § 1 et seq., of Flack's Annotated Maryland Code of 1951. This Act was considered and discussed by this court in the case of In re Yost, D.C.Md., 107 F.Supp. 432. In that case it was held, affirming the order of the referee, that the claimant had not sufficiently complied with the Trust Receipts Act, but the nature and scope of the Act were considered by the court at some length and need not here be repeated as reference can readily be made to the opinion in the Yost case.
The trustee in bankruptcy filed a brief answer to the petition of Redisco neither admitting nor denying the averments of the petition but calling for strict proof. In due course thereafter the referee held a hearing at which some oral testimony was submitted, and on April 23, 1953, the referee passed his order denying the petition of Redisco. The latter duly filed its petition for review which is the matter now before the court. The certificate of the referee filed June 2, 1953 is a somewhat fuller statement of his findings and conclusions than appeared in his prior order.
The reason assigned by the referee for denying the petition of the claimant was put on two grounds. First, as to all ten articles he relied on sections 18 and 20 of Art. 2 of the Maryland Code, which in rather involved language, provides that persons doing a mercantile business as an agent for another or in a name other than his own must file in the clerk's office of the appropriate city or county a designation of the name and address of the true owner of the business; and if he fails to do so any creditor can sue the debtor in the name of the agent of the true owner of the business and subject any property on the premises to satisfy his claim. For the application of that Maryland statute to this case the referee points out that the bankrupt in the instant case was named Nickulas who, however, was trading as Manor Sales, or sometimes as Manor Sales Furniture Store (as stipulated by counsel in this case), and secondly, that in complying with the Maryland Trust Receipts Law Redisco filed a statement with the State Tax Commission stating that the trust receipts financing was to be done by Manor Sales. The referee also held that as to two of the ten articles there was not a sufficient description given in the trust receipts to identify the articles. I will discuss these two points separately.
On the first point as to the application of Art. 2, §§ 18 and 20, of the Maryland Code the referee relied on a decision of Judge Soper in 1927 (when District Judge) in In re Eichengreen, Reliance Shoe Co. v. Manly, D.C., 18 F.2d 101. It will be noted, however, that the main point decided in that case was that the claimant relied on a contract as a consignment but Judge Soper held that it was rather in the nature of a contract of sale or a conditional contract which had not been recorded as required. The point in the opinion relied on by the referee was a subordinate contention of the receiver in bankruptcy based on sections 18 and 20 of Art. 2 of the Maryland Code. The referee apparently did not note that the case was appealed to the Fourth Circuit, Reliance Shoe Co. v. Manly, 25 F.2d 381, and affirmed by the Court of Appeals on the point first mentioned, the opinion on appeal stating that it was found unnecessary to consider the second point. And with regard to the applicability of the second point in the Eichengreen case, there is an apparent difference on the facts when compared with the instant case. It is noted by Judge Soper in discussing the second point that the claimant had furnished to the bankrupt more than 50% of his stock in trade; while in the instant case the figures are quite different with respect to Redisco. Here the bankrupt's total indebtedness was about $145,000, of which amount about $98,000 were for secured claims of one kind or another, and of the secured claims Redisco was a security creditor to the extent of only $27,000 based *592 on conditional sales, as to which there is no present dispute so far as I am advised, and more importantly the value of the ten articles sought to be reclaimed here under the Trust Receipts Act was only about $2,000.
In passing it may also be noted that the opinion in the Eichengreen case on the second point relies to a considerable extent on several cases in the Fourth Circuit dealing with the effect of a Virginia statute, § 5224 of the Factor's Act, Va.Code 1919, presently § 55-152 of the Va.Code of 1950, which, as will now be noted, apparently differs in at least some material respects from the Maryland statute. The Virginia statute requires that the true name of the owner must be posted on a sign on the place of business. It therefore seems to fall in the category of such statutes as are called "sign" statutes. The Maryland Act, however, does not require the posting of a sign on the place of business but merely the filing of a certificate with the clerk of the court. Its category, therefore, is in the nature of a "recording" statute.[1]
In a later case in this court Judge Coleman also considered the application of sections 18 and 20 of Art. 2 of the Maryland Code which was cited by the trustee in bankruptcy against a petition for reclamation based on a consignment for sale. In re Sachs, D.C., 31 F. 2d 799, 800. He held that those sections were not controlling by reason of section 9 of Art. 2 of the Maryland Code which provides:
"`the owner of any such goods, wares or merchandise in the hands of an agent or factor, unsold and not pledged, may demand and recover the same from such agent or factor, or trustee of such agent or factor in the event of his insolvency and in preference of all other creditors of such agent or factor.'"
Judge Coleman's opinion in 1929 did not refer to the prior Eichengreen case and I have not been able to find that either sections 18 and 20, or section 9 of Art. *593 2 of the Maryland Code have been considered or applied by the Court of Appeals of Maryland with respect to such a situation as we have in the instant case. See, however, Mundon v. Taxicab Co., 151 Md. 449, 455, 135 A. 177; Syriani v. Gebhart, 195 Md. 69, 72 A.2d 766.
But more importantly I think it is to be noted that the Maryland Trust Receipts Act passed in 1941 is very much later in date than sections 18 and 20 of Art. 2 enacted in 1922, and long after the decisions by Judges Soper and Coleman. The dominant point in this case is whether the claimant has substantially complied with the requirements of this later Act. The last section provides that "This article may be cited as the Uniform Trust Receipts Act." This uniform Act has been passed in many other states, by at least 29 up to 1951. It seems to have been designed to enable small business dealers, without large capital, to procure merchandise for resale and at the same time protect prospective creditors of the dealer by giving recorded notice of the particular form of financing the business. Its wide adoption by a majority of the states indicates that it has found large favor as a new form of business financing. While I am not aware of any decision in the Maryland Court of Appeals, it seems a reasonable inference that in view of its wide adoption it should be liberally applied in business matters where there has been a reasonably full and substantial compliance with the requirements of the Act. The referee himself expressed this view in another connection.
Counsel for the trustee contends that there was an obligation on the claimant to comply not only with the Trust Receipts Act but also to see that the bankrupt had complied with sections 18 and 20 of Art. 2; but my view is that the Trust Receipts Act itself dispenses with that additional requirement because section 16 provides:
"16. (Election Among Filing Statutes.) As to any transaction falling within the provisions both of this Article and of any other act requiring filing or recording, the entruster shall not be required to comply with both, but by complying with the provisions of either at his election may have the protection given by the act complied with; except that buyers in the ordinary course of trade as described in sub-section (2) of Section 9, and lienors as described in Section 11, shall be protected as therein provided, although the compliance of the entruster be with the filing or recording requirements of another act."
The purpose of the Act is to protect the entruster where he complies with the Trust Receipts Act. That Act does not require him to do more. Section 16 is seemingly to the contrary. The Uniform Trust Receipts Act is a complete and independent Act of itself and when complied with protects the "entruster" of the goods against attack by the trustee in bankruptcy. See Coin Mach. Acceptance Corp. v. O'Donnell, 4 Cir., 192 F.2d 773, upholding a claim of an "entruster" who had complied with the Virginia Trust Receipts Act against the contentions of the trustee in bankruptcy based on recent amendments of the Bankruptcy Act. My conclusion is that Art. 2, §§ 18 and 20 of the Maryland Code do not apply to the instant case.
The objection to the validity and enforceability of the trust receipts as a whole is based only on the fact that in indexing the statement of trust receipts financing the State Tax Commission indexed it in the name of the business rather than in the name of the individual. The statement of trust receipts financing which had to be filed with the State Tax Commission was signed "Manor Sales, By Francis A. Nickulas". Redisco filed the whole agreement with Manor Sales with the State Tax Commission in accordance with Section 13. The proper indexing is made the duty of the Tax Commission; and the indexing is to be "according to the name of *594 the trustee and containing a notation of the trustee's chief place of business if given on the statement". Redisco was under the statute called the "entruster" and Manor Sales was the "trustee". Subsection 4 of section 13 provides:
"Presentation for filing of the statement described in sub-section (1), and payment of the filing fee, shall constitute filing under this Article, in favor of the entruster, as to any documents or goods falling within the description in the statement which are within one year of the date of such filing, or have been, within thirty days previous to such filing, the subject-matter of a trust receipt transaction between the entruster and the trustee."
It is the contention of counsel for the trustee in bankruptcy in this case that despite this seemingly full compliance by Redisco with the Trust Receipts Act, nevertheless Art. 2, §§ 18 and 20 apply because the trustee in signing the statement required to be filed by the Act, signed "Manor Sales, By Nickulas". I do not think the contention is sound.
The contention that there was no substantial compliance with the Act because in the State Tax Commission the trust receipts financing statement was indexed only in the name in which Nickulas conducted the business seems very technical and unsubstantial in view of the nature of the business and the purpose of the Act. It is very usual indeed for some individuals to conduct their business under a trade name and prospective creditors would be more likely, in many cases at least, to think of the name of the business rather than of the individual. This was judicially recognized by the First Circuit in Seder v. Zakaras, 35 F.2d 729. No facts or evidence have been called to my attention which tend to indicate that any creditor of the bankrupt was in any way misled or deceived by the manner of indexing in the State Tax Commission.
The second and apparently minor point made by the referee is that two of the ten articles covered by trust receipts were not sufficiently described in the particular receipts given by Manor Sales to Redisco. The referee expressed it in this way:
"A trust receipt which gives only the model number and serial number of the articles purported to be covered thereby but does not give the name of the maker nor the nature of the chattel * * * (does not) comply with section 2(1) (b) of Article 95 [95½] of the Maryland Code which provides for a `writing designating the goods'."
The requirement with respect to a description of the goods covered by the trust receipts found in section 2(1) (b) of the Act which requires only in very general terms "a writing designating the goods, documents or instruments concerned, and reciting that a security interest therein remains in or will remain in, or has passed to or will pass to, the entruster". The two articles referred to by the referee were designated by both the serial number and the model number. There is testimony submitted by Redisco by a competent witness to the effect that anyone familiar with the customs of the trade in such articles as refrigerators could readily identify the manufacturer and the type of article by the serial number and the model number. And in fact it appears that the two articles referred to have been so identified and segregated and are now presently in storage pending the decision of the case. There is nothing called to my attention which tends to show any uncertainty or confusion as to the identity of these two articles.
In the absence of judicial decision as to the sufficiency of description of articles required by the Trust Receipts Act, we may seek analogies in judicial decisions with respect to the sufficiency of description of articles covered by chattel mortgages or conditional sales agreements. Such descriptions have generally been held sufficient where on their face or by satisfactory parol evidence, especially when coming from persons familiar with the particular *595 trade, they can be identified. See for instance, Salabes v. Castelberg & Sons, 98 Md. 645, 57 A. 20, 64 L.R.A. 800; United States Fire Ins. Co. v. Merrick, 171 Md. 476, 190 A. 335; In re Putney Granite Co., D.C.Md., 14 F.Supp. 31; State to Use of Horsey v. Maryland Casualty Co., 164 Md. 69, 163 A. 856 (all relating to chattel mortgages); Tilton v. H. M. Wade Mfg. Co., 4 Cir., 2 F.2d 358; In re Lowrey, 4 Cir., 40 F.2d 321; Floyd v. C. Nelson Mfg. Co., 5 Cir., 93 F.2d 857 (all conditional sales contracts).
Counsel for the trustee argues that in addition to the two articles held insufficiently described by the referee, he should also have held the description insufficient as to the remaining 8 articles sought to be reclaimed. But the trustee did not seek any review of the referee's order and findings on that point and I find it unnecessary to discuss it other than to say that I think the referee was correct in finding their description sufficient. As a practical matter it should also be noted that the trust receipts themselves are given by the trustee to the entruster and held by the latter. The statute does not require that they themselves be recorded. Presumably both the trustee and the entruster are familiar with the articles dealt with and where they are enabled to identify the particular articles, that should be sufficient. Creditors are not directly interested in the description of the articles, at least before bankruptcy, as the trust receipts are not recorded. Counsel for the trustee cites the prior decision of this court in In re Yost, D.C., 107 F. Supp. 432, in support of his contention that there was an insufficient description. But the insufficiency in the Yost case was not due to insufficient designation but to the fact that some of the trust receipts were for articles which had been substituted for those described in prior trust receipts which were no longer held by the entruster.
For these reasons I conclude that the order of the referee denying the petition for reclamation by Redisco of the ten articles in question should be and it is hereby reversed, and it is further ordered that the petition for reclamation as to these articles be granted.
NOTES
[1] In the argument of counsel here it was stated that the only objection made by counsel for the trustee to the validity of the claim for reclamation was the insufficiency of description of the articles in the trust receipts, and that the point made by the referee now under discussion was not made by counsel but on the referee's independent consideration of the matter and without asking for further argument upon the point from counsel for the claimant. It has also been pointed out now that these so-called "sign statutes" exist in Virginia, West Virginia and Mississippi.

Counsel for the trustee here refers to Vol. 3, Collier on Bankruptcy, 14th ed., p. 959, the last paragraph reading:
"In the few states that have `traders' acts' or `sign statutes', compliance with their provisions may be necessary before the security transaction of the trustee will have been perfected. Accordingly if a state has both a traders' act that is applicable to the situation at hand and the Uniform Trust Receipts Act, there must be a cumulative compliance."
However, it is to be noted that Collier in another section points to the difference between the statutes requiring posting of signs and the Maryland statute. See Vol. 3, 14th ed., § 60.44, p. 953.
"No discussion of consignments or bailments would be complete without mention of the `Trader's Act' or `Sign statute' prevailing in a few states."
"Footnote 21, See the Trader's Act of Virginia and West Virginia * * * and the Mississippi sign statute * * * See also the more limited Maryland Agents and Factors Act."
Counsel for the trustee contends that the Maryland statute should be classed as a "sign statute" rather than a "recording statute"; but with this contention I cannot agree. I think section 16 of Article 95½ is here applicable. For a further discussion of the Virginia and Mississippi statutes see 27 Va.L.Rev. 962, and Collier on Bankruptcy, Vol. 3, 14th ed., §§ 60.43, 60.45, 70.18, 70.19, 70.58, 70.62; Kusnetzky v. Security Ins. Co., 313 Mo. 143, 281 S.W. 47, 45 A.L. R. 198; Hayes v. Providence Citizens' & T. Co., 218 Ky. 128, 290 S.W. 1028, 59 A.L.R. 455; Crump v. Hill, 5 Cir., 105 F.2d 124, 124 A.L.R. 165; Floyd v. C. Nelson Mfg. Co., 5 Cir., 93 F.2d 857. Counsel for the claimant states that Virginia has very recently adopted the Uniform Trust Receipts Act.