HOFFMAN *v.* SETH ET AL.

[No. 149, October Term, 1954.]

236

*Decided May 13, 1955.*

The cause was argued before BRUNE, C. J., DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William Saxon,* for appellants.

*William H. Hudgins,* for appellees.

HENDERSON, J., delivered the opinion of the Court.

The appellants, complainants below, filed a bill of
complaint to set aside, on grounds of fraud or duress
by wrongful threat of criminal prosecution, a deed of
assignment dated February 9, 1953, conveying their in-
terest as tenants in common in certain leasehold prop-
erties to Sherwood, trustee, and an agreement of the
same date setting forth the terms of the assignment.
This case was consolidated with another case in which
the appellants intervened by petition claiming the pro-
ceeds of a foreclosure sale of the properties in question.
After a lengthy hearing, the Chancellor dismissed the bill
and the petition.

The appellants had organized in 1948 a corporation
known as Television Company of Maryland (Television),
of which they owned the entire capital stock, and which
engaged in the business of selling at retail television

sets, radios, and household appliances. On May 25, 1949, and again on January 11, 1951, Television entered into agreements to engage in trust receipts transactions with Stephen Seth & Co., Inc. (Seth), a distributor that apparently did its own financing. These agreements were duly recorded, and thereafter, from time to time, television sets and other merchandise were delivered to Television by Seth, upon the execution of receipts describing the merchandise delivered, executed by the appellants as officers of Television, trustee, and endorsed by them individually. The recorded agreements purported to be made in compliance with the provisions of Code (1951), Art. 95½, as enacted by Ch. 268, Acts of 1941, known as the Uniform Trust Receipts Act. While apparently not required by the Act, the agreements specified that each delivery should be accompanied by a down payment of 10% of the total cost of the merchandise so delivered to Television, 10% at the end of the month and the balance within 60 days. Seth retained a security interest in the merchandise to be exercised by repossession, or otherwise, in the event of default. However, it appears that the down payments were not insisted upon, and instead, it became customary for Television to settle its accounts monthly and, in 1952, to make irregular payments on account.

In February, 1953, Television was indebted to Seth in the sum of approximately $120,000, and was heavily indebted to other creditors who were demanding payment. Mr. Berwanger, general manager of Seth, induced the appellants to assign leasehold properties owned by them individually and to execute an agreement whereby the grantee, Sherwood, trustee, agreed to hold the properties in trust for one year as collateral for Television's indebtedness to Seth. The appellants contend that Berwanger falsely represented to them that they were criminally liable for violations of the trust receipts law, and threatened to prosecute if they refused to assign the collateral. They did so to escape a prosecution. Other creditors threatened a receivership, and a Creditors Committee was appointed, with the consent of Television, to

take over the operation of the entire business and offer it for sale. Several offers to purchase were received, the best offer being that of the appellants.

About March 1, 1953, C. Edward Jones was brought into the situation as attorney for Seth. He had had no part in the transaction of February 9, but had the deed of assignment recorded on March 11, 1953. He took the position that, to the extent of some $60,000, Seth had a preferred claim based on the trust receipts held by it, and a right to reclaim the merchandise on hand. He refused to agree to the proposed sale to the appellants and their financial backer in the reorganization plan, Nemeroff, and the latter refused to put up the money if Seth persisted in any claim to a preference or to the merchandise on hand. Other creditors refused to recognize that Seth had a preferred claim. Jones finally told Rabovsky, in the presence of Rabovsky's attorney, Stevan, that if he would agree to waive the one year clause in the collateral agreement of February 9, 1953, and would ratify that agreement, and the assignment, he would agree on behalf of Seth to waive all claim to a preference based on the trust receipts. Stevan drew up an instrument in which Seth waived any claim "for preferred or priority status which may arise from purported trust receipt transactions between [the parties] whether such merchandise be sold or unsold," and Rabovsky and Hoffman ratified the agreement of February 9, 1953. The instrument recited that "the parties hereto have mutual interests in the consummation of the pending sale". At the insistence of Rabovsky, a third clause was inserted, whereby Seth agreed to abstain from any criminal prosecution against Rabovsky and Hoffman. At the same time the appellants signed a letter to Sherwood, authorizing him to dispose of the properties held by him as trustee, without regard to any time limitation in the deed of trust. Rabovsky signed the papers that day, March 16, 1953, and Hoffman, who was out of town, signed them two weeks later in Stevan's office. Subsequently, foreclosure proceedings were instituted by Sherwood.

We may assume, without deciding, that an agreement or conveyance procured by a false representation of a material fact, as distinguished from a mere opinion, if known to be false and made with the intention of inducing another to enter into the transaction, may be set aside under some circumstances. Cf. *Buschman v. Codd,* 52 Md. 202; *McKeever v. Realty Co.,* 183 Md. 216, 225, and *Clark v. Kirsner,* 196 Md. 52, 56. See also *Restatement, Contracts,* Sec. 492, *et seq.* Such a transaction is voidable but not void, and subsequent ratification with full knowledge of the facts may operate as a bar to a suit to avoid it. *Restatement, Contracts,* Sec. 13, *et seq.* Rabovsky testified to a threat by Berwanger and the latter testified he told them he believed they could be prosecuted, but added that Seth had no intention of doing so. The Chancellor found that in the first instance they were influenced by the fear of prosecution, but did not find that the statement was false or that Berwanger, who was not a lawyer, knew it to be false. He merely noted that "there is a serious question as to whether there could have been a successful criminal prosecution". We need not decide whether an erroneous statement of opinion as to domestic law would fall within the rule. See 5 *Williston, Contracts* (Rev. ed.), § 1495, and Note 24 A. L. R. 2d 1039.

It is admitted that the appellants took no immediate steps to repudiate the transaction, but collected rents from the properties conveyed, as authorized in the trust agreement of February 9, 1953, both before and after the execution of the paper of March 16, 1953. It was not until October, 1953, that a reconveyance was demanded. The appellees contend that this was an acquiescence, under the rule applied in *Hagan v. Dundore,* 187 Md. 430, 441, or raised an estoppel under the rule stated in *Price v. Adalman,* 183 Md. 320, 325, and *Hamlin Mach. Co. v. Holtite Mfg. Co.,* 197 Md. 148, 159, particularly since Seth forbore to take action looking toward the establishment of a preference or the reclamation of merchandise delivered and on hand.

We think, however, that the Chancellor correctly placed his decision on the ground that there was a clear ratification of the conveyance, with full knowledge of the facts, and with the advice of independent counsel, on March 16. Rabovsky testified that Stevan was his attorney at that time and advised him to sign the paper, although he denied discussing the criminal aspects of the case with Stevan. Stevan testified specifically that he advised Rabovsky there was no ground for a criminal prosecution, but if he signed the paper he would be "giving up any possibility, whether it be real or remote, of fighting this conveyance, and his response to me was, 'I just want this sale to go through, that is, to remove the opposite factor of Stephan Seth and the sale of the old company to the new company'." The Chancellor found as a fact that Stevan had been fully informed as to the circumstances of the prior transaction, and had advised Rabovsky that he did not believe there could be any criminal prosecution.

The Chancellor stated: "The Court further finds that Rabovsky was advised by Mr. Stevan that if he signed the paper of March 16th, he would be estopped from asserting any rights he might have against the Seth Company by reason of the circumstances under which the paper of February 9th was executed. Rabovsky, however, with this advice and knowledge, thereafter signed the March 16th paper. At that time, the Court believes that Rabovsky was not really concerned, except in a vague, general way, with criminal prosecution. The Court does not believe that the signing of this paper by Rabovsky was influenced at all by any thought of criminal prosecution." There was evidence to support the Chancellor's findings, and, of course, since he saw and heard the witnesses, his findings are entitled to great weight. *Five Oaks Corp. v. Gathmann,* 190 Md. 348, 357.

The appellants contend that there was a total lack of consideration for the agreement of March 16th, because there was no basis either for a criminal prosecution or for a right of preference. If the latter exists it would be sufficient. *Restatement, Contracts,* Sec. 83. We have

not heretofore been called upon to construe the provisions of Code (1951), Art. 95½, although it has been construed by Judge Chesnut in two cases in the U. S. District Court, *In re Yost,* 107 F. Supp. 432, and *In re Nickulas,* 117 F. Supp. 590. In the case last cited repossession was allowed, as to certain goods on hand, as against a trustee in bankruptcy.

Apparently the appellants rely upon the waiver of the down payment provisions of the agreements as taking the case out of the Act, and barring any action for preference or even repossession of the merchandise on hand. The appellees contend that this indulgence could not affect the security, as between the parties. We find it unnecessary to pass on the question here. It has been held that forbearance to assert a groundless claim having no legal justification is not a good consideration. *Strohecker v. Schumacher,* 185 Md. 144, 151; *Dipaula v. Green,* 116 Md. 491, 494. But if the claim is at least doubtful and made in good faith, forbearance to assert it is a good consideration. *Snyder v. Cearfoss,* 187 Md. 635, 643. See also *Restatement, Contracts,* Sec. 76(b); 1 *Williston, Contracts* (Rev. ed.), § 135; *Johnson v. Savidge,* 260 P. 2d 1088 (Wash.). Seth was advised by its attorney, Jones, that it had a right to repossess at least part of the merchandise on hand. There is no reason to doubt its good faith in asserting this claim, which was a major obstacle to the proposed reorganization.

The Chancellor found that "The consideration and motivation in the signing of the March 16th paper was to remove this very definite and real stumbling block to the bringing into being of a new Television Company of Maryland. Without a settlement with the Seth Company, there could be no reorganization." Seth not only waived all right to assert a preference, including the right to repossess goods unsold, but approved the sale to the new company, which it was in no way obligated to do. Nemeroff had refused to back the new enterprise "unless you get the Seth Company out of the way". We

think the waiver of all claims and the approval of the sale was a good consideration under the circumstances.

*Decree affirmed, with costs.*